Good morning, and may it please the Court, I'm Howard Hong. For the petitioner, Ms. Xiaomin Chen. At Council table with me is Co-Counsel Attorney Gail A. Dulai, who was on the briefs. And may it please the Court, may I be served three minutes at the end for rebuttal. You certainly may, Counsel. You can see the clock, I hope, yes? And so you'll be responsible for tracking your own time, please. Thank you. Ms. Xiaomin Chen is a Chinese national, born and raised in China, who came to this country at the age of 27 years directly from that country, a country whose government is notorious for its inhumane, coercive population control practices. Being an ethnic Chinese coming directly from China, Ms. Chen met the essential and basic elements of the claim for asylum under Section 101A and 42B of the Immigration and Nationality Act, which, of course, special protection to persons who assist a coercive population control program. Sadly, Ms. Chen fell into the clutches of a notarial, one Enrique Zuniga, who prepared and signed the asylum application which brings Ms. Chen before this Court a second time. I would like to first discuss the issue of improper notice and then the issue of the notarial element of an asylum claim. I'll let Your Honors defer, I reversed the order. That's fine. On the issue of lack of proper notice, the record clearly shows that the immigration judge failed to give the full and complete warnings set forth at 208D4, which are necessary to trigger a journalist's asylum bar. Section 208D4 requires that part of the warning... Mr. Hom, if I could ask, didn't your client sign the document which required her to state these statements under oath as being true? Yes, she did, Your Honor. And under a matter of chima, isn't that enough? It may be, except for the lack of warnings. If we look at the asylum application itself in the record at page 554, the very last page of the asylum application, there are the pre-printed warnings plus the statement. Have you been provided with a list of persons who may be able, who may be available to assist you at little or no cost with your asylum claim? There's the word yes and there's the word no. Neither words were circled by the applicant. And at the time of the asylum interview, in this case, the asylum officer failed to ask the applicant that particular question. Have you been provided with a list of persons who may be available to assist you at little or no cost on your asylum claim? But did the immigration judge give her the warning, a very direct warning, at the May 24th hearing? Your Honor, the warnings at the very first hearing, when she was not represented, did include a legal aid list at the conclusion of the hearing. Several months later, at the re-calendar master hearing, when she appeared with counsel, there's a whole discussion on the consequences of a frivolous application. We can see that. However, on those same pages of the record, there's not one sentence where the immigration judge says, and I advise you at this time that you wish to file this application for asylum, that you have the right to be represented by counsel. And then D for A concludes with the three letters, A and D, and sweep it in with it, subsection 4B. But if she's advised on May 24th that she has the right to a lawyer, how many times does she have to be re-advised? Your Honor, the answer to that is found in the statute at 208D4A. At the time of filing of the application for asylum, at the first master calendar, no application was being filed. That notice was just a general notice of a legal aid list. The statute specifically requires a list of attorneys who provide representation in asylum claims. The general list, Your Honor, if you go to the website, it's about 9, 10, 12 pages that I looked at the other night. Interspersed in that list of about 83 or 86 attorneys are 5 or 6, maybe 10 attorneys who say we will do asylum cases. Interspersed in all those pages. How is a person, any applicant, it took me an hour to find that list, Your Honor. That list is not readily available. When a person downloads the asylum application form, form I-589, yes, the form warns you about the consequences. Yes, the forms advise you you have the right to representation on a legal aid list. But the application form does not include the legal aid list. It does not even include a link to the EOIR website that has to link. Who has to link? The prosecutors have to link. And it's not on the USCIS website. So I submit, Your Honor, it cannot be in compliance with the statutory requirements. So you're saying there's no valid advice given unless the list is given with the advice. Is that right? That's what Congress said at 208-D. Was this argument raised to the board? The board on remand from the first Chen decision sat on this case for two years. I was waiting for a notice for briefing. I was waiting for a remand to the immigration judge so that they could do it right and get the proper notice, Your Honor, at various bar association meetings. I spoke with the deputy proclurse of the Board of Immigration Appeals. What do you guys do on the remand? Do you have a schedule? I don't see anything in the practice manual that says I can unilaterally submit my own brief. In fact, the practice manual specifically states don't call us, we'll call you. And it says, of course, to that effect, don't submit anything that we don't need. This is as one of your colleagues said in the Ramirez-Alejandro case. This is TEGWAR, the exciting game without any rules. How is an alien, how is counsel supposed to respond? Case gets remanded, we're all happy. Let's assume you're right and there was no opportunity to raise it on remand. Isn't the real problem was it wasn't raised earlier before the remand? It was never raised in this court, in the Chen Won panel, and it wasn't raised before the BIA prior to that. So you've created a scenario where if you think of a new argument after remand, you can then raise it for the first time. Well, no, Your Honor. On remand, the Board of Immigration Appeals had the guidance of matter of YL. This immigration judge, these lawyers did not have the guidance of the Board's subsequent decision. In fact, if you look at the testimony and the transfer, rather, the immigration judge just gave one warning, which is the consequences, and the immigration judge also erred in thinking if there's fabricated evidence, that's enough to show a material element of the asylum claim, and that's not true. It's completely faulty, and I don't think as a matter of due process we can ever say, oh, counsel didn't raise it. But the regulations specifically state, and this court has held in numerous decisions, that the immigration judge is obligated, it's the duty of the immigration judge to fully establish the record. Not a lawyer, especially not this first lawyer, as we can see from the transcript. He didn't know what was going on. He was making statements that he shouldn't be making, and he succumbed to the immigration judge's suggestion. Don't you want me to look at this asylum application? I would submit, Your Honor, that initially when counsel stated, I want to do withholding. I want to do suspension. I want to do adjustment. The immigration judge went through each one of those and said you can't do it, except for when she got to the withholding, because she said, oh, don't you want me to do the asylum claim as well? It works to that effect, and he acquiesces to that. You fast forward to the third hearing when the petition was finally represented by competent counsel. Counsel states to the immigration judge, we don't know what on earth was this lawyer thinking about last time a few months ago. So it's very clear the immigration judge was unnoticed. Everybody knew, hey, this wasn't right. But the remedy at that time, the solution at that time was we withdraw the application. That should resolve it. It goes beyond that, doesn't it? Because it's not only that it wasn't raised in the prior proceedings before the first panel of this Court and before the BIA before that, it also was affirmatively disclaimed. The panel in Chen 1 noted that neither party argues that the frivolous finding violates the procedural safeguards set forth in YL. That was stipulated, too, that there was no such violation. And the brief before the BIA said because she was apprised of the severe consequences of a frivolous finding, she decided not to pursue that formal release. Your Honor, correctly stated, and that's exactly what the warnings are in the immigration judge's bench book, given these warnings. But the immigration judge's bench book neglects to note that in the very same paragraph, the statute says advise of the right of the legal wait list. But counsel, forgive me for interrupting, but I'm not sure that you're really going to Judge Kogan's point. His point is that there was an affirmative representation that there hadn't been a procedural violation. And that's my question, if it wasn't his, although I think it was. That is my question. Thank you. Wasn't there such a concession made? No, with all due respect. It was a concession made to what the immigration judge said based upon what all the parties, even the government, thought were the only warnings required, which is the consequences of a frivolous finding. But in order for the consequences to adhere, that same paragraph, 4A states advise of the right to legal representation. So you've got to have both. And so everybody's operating on the wrong assumption, even the immigration judge. Let me ask it one more way. Okay. Is there any reason that the point you are making now could not have been made before the BIA, not preceding this panel, but preceding the prior panel? If I were to. Any reason why not? No. I would say the counsel at that time went on the premise of the theory that you may withdraw your application. And that would take care of the whole thing. So is it your position that relying on that understanding, that there was always the ability to withdraw, that that was somehow a position that your client relied upon in not challenging a procedural irregularity? Well, not exactly, Your Honor. I think the bottom line is when there's a due process violation grounded in fundamental constitutional principles, I don't think anybody can ever weigh that. And it's incumbent upon this Court to make sure that the government itself dots the I's and crosses the T's. And in this case, the government neglected to advise the ailment of this right, not only the immigration judge, but also going back, because in the achievement decision that Your Honor mentioned, the government argues that, well, you got the warnings at the asylum officer level. Well, she didn't get at the asylum officer's level. No checkmark there. If you look earlier in the asylum application, there's one question when the asylum officer crosses off a yes and changes it to a no and circles it. You see checkmarks made by the asylum officer indicating that he had questioned the applicant on those questions. How do I know that's standard operating procedure? When the officer asks a particular question, you check off that question. That's the way they taught me when I worked there for four and a half years as a national station examiner. And that's the way I observed how the officers still do it at any of these immigration hearings. The officer neglected to ask the right questions, and therefore, we hear due process. If there are no other questions, may I reserve the balance of my time? Certainly. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Edith Yacon on behalf of the Respondent, Attorney General. This Court should deny the petition for review. Ms. Chen presented a fraudulent asylum claim supported by fraudulent documents to the Department of Homeland Security. She pursued this fraudulent claim at her asylum interview and before the immigration judge. And it was only after she married a United States citizen, creating a new avenue for relief, that she sought to admit her wrongdoing and withdraw her claim. In light of the plain language of the statute, the Board concluded that her mea culpa was too little, too late. The Board explained that contrary to Ms. Chen's argument, a determination that an asylum application is frivolous may be made even where the asylum application has been withdrawn. Such is true because the statute and the regulations provide that the frivolous asylum inquiry is triggered once the application is made, in the words of the statute, or filed, in the words of the regulation. Such is also true as a matter of policy. Allowing the preemptive withdrawal of an application to prevent the finding of frivolousness would undermine the potency of the required warnings. An alien such as Ms. Chen, who not only filed a frivolous application, but also testified falsely in support of her application to an asylum officer, could escape the consequences deliberately chosen by Congress to prevent such an abuse of the system. Counsel's main point is that that's only true when there's the procedural safeguards in place. And he says there weren't. Why don't you respond to that specifically? That's absolutely not true in this case, Your Honors. As a matter of law, Chima, ruling by this Court, concluded that the warnings provided in the asylum application are sufficient to meet the requirements of the statute, notifying the alien of the consequences of filing a frivolous asylum application and his right to counsel in such proceedings. And in this case, it may be true that Ms. Chen didn't circle the yes under the question, have you been provided a list of counsel? However, she appeared before the immigration judge subsequently, and the immigration judge repeated the notice to Ms. Chen that she has a right to counsel in these proceedings. And, in fact, when Ms. Chen appeared for her second master calendar hearing, she appeared with an attorney. And it was at that point that the immigration judge gave her the frivolous asylum warnings. So it can't be said that Ms. Chen didn't know that she had a right to have counsel, because, in fact, not only did she know of it, she sought and had an attorney with her at the hearing in which she received these frivolous asylum warnings. What your adversary stated is that until she actually gets the list, it's either a statutory or a due process violation or both. That's incorrect, because as the Court recognized in Chima, the warning is what's required. And the warning is provided in the I-589. Now, the statute does provide, it says here, 208D-4. At the time of filing an application for asylum, the attorney general shall advise the alien of the privilege of being represented by counsel and of the consequences under paragraph 6 of knowingly filing a frivolous application for asylum and provide the alien a list of persons who have indicated their availability to represent aliens in asylum proceedings on a pro bono basis. So when did she get the list? At the very latest, she received the list in immigration court. There is no indication one way or the other whether she received the list with the asylum officer. It does appear as though she didn't circle the question or answer in the asylum application itself. However, at the very latest in this case, she received the list at the time that she appeared before the immigration court. But I take it his point is that if she didn't get the list on May 31st or earlier, then she already had proceeded down the primrose path and it was too late in August by the time she realized the consequences of that. She filed. She was represented by counsel and she filed an application for asylum. It would be hard-pressed to say that her lack of knowledge of the right to be represented by counsel prejudices her in the case where she already is represented by counsel. Now, Your Honors, as indicated by the Board, the statutory requirement that there be a final determination on an application doesn't require a final determination on the merits of the asylum claim itself, as argued by Kishner in his opening brief. Mr. Cohen, may I ask, what is your response to Mr. Holmes' argument about the failure to circle that item? Is that something we should take notice of? Or what's your direct response to his argument? The direct response is that the application itself provides the requisite warnings to the alien, and this is what the court held in Chima. In Chima, the court simply concluded that the I-589 is sufficient as a matter of law to meet the statutory requirements in 208 D-4. So the failure to circle that item is of no consequence in this case? Is that your argument? It's not of consequence because the statutory requirements are met by the application. It's concluded by Chima. And unless the court were to hear the issue en banc, Chima simply is dispositive of the issue because it decided as a matter of law that the I-589 application provides the requisite warnings. Thank you. Thank you. Your Honors, to address just one additional issue, which Mr. Holmes didn't reach in his argument but presented in the briefs, the language of the statute provides that a frivolous finding is effective as of the date of final determination on such application. And this simply doesn't require a determination on the merits of the asylum claim itself. In fact, as recognized by the Board, it would be pointless in many cases for the immigration judge to separately assess an asylum application if he determines that the application has material elements which are fabricated. In this case, where Ms. Chen conceded that her whole claim was fabricated,  and never coerced into forced sterilization in China or abortion. Now, if the IJ were to have to address the merits of the asylum claim itself, the court would be requiring the immigration judge in essence to render an advisory opinion on an asylum claim which simply isn't presented by the applicant because it's fraudulent. It seems to me it's even a little stickier. It would be an advisory opinion on a hypothetical. Exactly. Exactly. And neither the statute, the regulations, nor the law of this Court require immigration judges ever to render advisory opinions. And this is simply a case in point of why requiring a determination on the merits of the claim itself would not be required in a case where there's a preemptive decision determining that the application is fraudulent or material elements have been frivolously presented. So, Your Honors, in this case, the respondent would ask the Court to deny the petition for review where Ms. Chen's withdrawal of her asylum application was not a bar to the immigration judge's frivolousness determination. And if you have no further questions, we'll submit. Anything further, Judge? No questions. Thank you, counsel. Thank you very much. Your Honors, with respect to the Chima decision, that Court specifically noted that the issue of the box being circled or not circled was not just positive because, in our case, we have the asylum application. We know it wasn't circled, and we know the asylum officer did not put a checkmark there to indicate he asked a question. Chima is distinguishable on that basis. Secondly, with respect to the fraudulent statements, we can see we don't dispute that fraudulent statements were made. But, Your Honors, it's the elements, not the evidence that we have to look at, the element of a coercive population control claim. In that of S, B, and C, the Attorney General, in that seminal decision years ago, said that the test for materiality is would the claim have been denied on the true facts. And we don't know the true facts because the immigration judge did not make a determination on the asylum claim. Yes, the government argues don't waste our time. It's an advisory opinion. But that's not an advisory opinion. It's a decision as to whether or not the asylum claim can stand on its own legs, cutting away the fraudulent statement prepared by Mr. Enrique Zuniga, a notorious notorious. So you're suggesting that in a case such as this one, where an applicant comes in and basically admits that the original application was entirely false, that the IJ should go forward and make a decision on the merits based upon new testimony, a new claim for asylum, is that it? As opposed to a hypothetical? Yes, Your Honor, provided that the claim, that the new evidence, supports the original claim. For example, in the Barreto case, the issue of firm resettlement, the alien in Barreto said, hey, I came directly to the U.S. admitting the fact, the very relevant and mature fact, that he had lived someplace for more than six months. That's an element of the claim. But this was entirely false. It's admitted to have been entirely false. With all due respect, Your Honor, if we look at the record, the transcript, whenever the immigration judge said, this is all a pack of lies, for example, the alien said, yes. But if you look up, what was the pack of lies referred to by the alien? The pack of lies was, was I married or not married? Did I have two children or did I not have two children? She was never asked a basic fundamental question. Do you have any fear, do you have any opposition to coercive population control policies in your native country of China? If you look at the COTA decision, that's exactly what the immigration judge did. He held a hearing and determined that if we put aside the fraudulent newspaper stories, was there anything else in the record to justify that, to establish that this was a bona fide claim? And the Ninth Circuit in the COTA decision held we have enough other evidence to say that the basic underlying claim was bona fide, notwithstanding the fraudulent statements. And if I may, Your Honor, footnote five of the underlying BIA decision. In that footnote number five, the Board of Immigration Abuse states, hey, in some circumstances, we may allow the alien to withdraw if the government stipulates. It's beyond me why the government wants to proceed the way they did, that on remand from this court that the Board of Immigration Abuse did not remand this back to the immigration judge. The reason I'm saying that is because clearly the record talks about material evidence. And I don't agree that it's material, relevant, but not necessarily material. And in the immigration judge's own decision, she identifies the standard as material evidence equals fraudulent fabricated asylum claim. Wrong standard, contrary to the regulations that state material element. Counsel, you've used your time. Thank you. Thank you, Your Honors. Thank you. Thank you.
judges: Cogan, O'scannlain, Christen